COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Fitzpatrick


MARGIE RUSH HARDER

                                                    MEMORANDUM OPINION*
v.      Record No. 0863-06-3                               PER CURIAM
                                                      SEPTEMBER 19, 2006
CAMPBELL COUNTY DEPARTMENT
  OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                          James Howe Brown, Jr., Judge Designate

            (Grady W. Donaldson, Jr.; Schenkel & Donaldson, P.C., on brief),
            for appellant.

            (David W. Shreve, County Attorney; Dion F. Richardson, Guardian
            *ad litem* for the minor child, on brief), for appellee.


        Margie Rush Harder appeals the trial court's decision terminating her residual parental

rights to her minor child, C.H., born on April 23, 1999.  Harder contends (1) the evidence was

insufficient to support the termination under Code § 16.1-283(B) and (C)(2); and (2) the

termination was not in the child's best interests.  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the

decision of the trial court.  See Rule 5A:27. [1]

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The trial court ordered the termination pursuant to Code § 16.1-283(B) and (C), but did
not further set forth which part of subsection (C) it relied upon.  The content of the court's order
parallels the requirements set forth in Code § 16.1-283(C)(2).  Thus, we presume that the
termination was ordered pursuant to Code § 16.1-283(C)(2).

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). "[T]ermination of residual parental rights is a grave, drastic, and irreversible action." Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991). When considering termination of a parent's residual parental rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

Code § 16.1-283 provides for the termination of residual parental rights under carefully defined circumstances. Here, the trial court concluded that the evidence warranted termination of Harder's residual parental rights to C.H. on alternative grounds, i.e., under subsections (B) and (C).

Where a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other grounds. See Boone v. C. Arthur Weaver Co., 235 Va. 157, 161, 365 S.E.2d 764, 766 (1988).

Code § 16.1-283 provides as follows, in relevant part:

> C. The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

\* \* \* \* \* \* \*

- 2 -

2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

The trial court found that clear and convincing evidence supported the termination of Harder's parental rights to C.H. under Code § 16.1-283(C)(2), as being in the child's best interests. That finding was not plainly wrong or without evidence to support it.

Credible evidence proved that on August 27, 2004, the Campbell County Department of Social Services (CDSS) received a child protective services (CPS) complaint regarding C.H., alleging inadequate housing and lack of supervision by Harder. Upon meeting with a CPS investigator in October 2004, Harder admitted she had used cocaine and marijuana a few weeks earlier. At that meeting, Harder signed a plan indicating that she would cooperate with substance abuse counseling, continue mental health counseling, take her prescribed medications, refrain from using illegal drugs, and follow through with home therapy and ongoing services.

In January 2005, Harder tested positive for drugs. Although she was referred for substance abuse and mental health counseling prior to her incarceration in April 2005, Harder did not attend her appointments. She did not complete intake with Alliance for Families and Children, and once she was referred back to Campbell County Counseling Center after her positive drug screen on January 27, 2005, she did not attend her appointments allegedly due to

- 3 -

bad weather and lack of transportation. Although Harder attended one court-ordered six-hour parenting class in October 2004, she made no further efforts to attend any other classes prior to being incarcerated, including those recommended by CDSS. Between fall of 2004 and her incarceration, Harder had problems managing C.H.'s behavior. Although CDSS provided in-home counseling to Harder, the counselor reported in March 2005 that Harder was unable to consistently follow through with appropriate recommended discipline, which negatively impacted efforts to improve C.H.'s behavior.

In the past, Harder exposed C.H. to ongoing violence and abuse by his father. Dr. Deborah Maxey, Ph.D, a licensed professional counselor, who testified as an expert witness, began working with C.H. on January 12, 2006. Dr. Maxey diagnosed C.H. as suffering from post-traumatic stress disorder. C.H.'s symptoms include nightmares, flashbacks of witnessing abuse and being abused, hypervigilance, and somatic complaints such as stomachaches and headaches. Dr. Maxey testified that C.H. viewed Harder as a frightened or frightening caregiver. Dr. Maxey noted that during some of his flashbacks, C.H. stated, "she hurt me" or "he hurt me," and, when asked who hurt him, he says his mom. Dr. Maxey stated that, based on her evaluation of C.H., she believed that, when C.H. was with Harder, she was dismissive of his "tender needs," which meant that C.H. did not believe there was anyone he could go to when he was afraid or needed help. Dr. Maxey opined that it would take up to two years once Harder was released from incarceration, assuming she cooperated and there were no other mental health or substance abuse issues, for her to be in a position to appropriately parent C.H. and for him to be reunited with her.

Harder's criminal record as of November 28, 2005 was admitted into evidence. It reflected that she has fifty-six felony convictions. She is currently incarcerated on welfare fraud and forgery and uttering convictions, with an anticipated release date of June 26, 2008.

The evidence established that C.H. is thriving in his pre-adoptive home. His behavior has improved dramatically, he is doing better in school, and has been placed in advanced math and reading classes for the first time.[2]

Based upon Harder's unwillingness or inability to follow through with services provided to her prior to her incarceration, as agreed upon in the October 2004 plan, her incarceration until June 2008, Dr. Maxey's expert opinions, and C.H.'s current status in his pre-adoptive home, we cannot say that the trial court was plainly wrong in terminating Harder's parental rights pursuant to Code § 16.1-283(C)(2) and finding that such termination was in C.H.'s best interests. "The [termination] statute clearly contemplates that efforts to resolve the 'conditions' relevant to termination are constrained by time." Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995) (citation omitted). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Serv., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). In light of Harder's incarceration and Dr. Maxey's opinion that it would take two years after Harder's release to successfully reunite her with C.H., it would be at least four years before Harder could resume her parental responsibilities, at which time C.H. would be eleven years old. While Harder's incarceration, standing alone, is not sufficient to support the trial court's termination of her parental rights, see Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992), "it is a valid and proper circumstance

---

[2] C.H.'s father signed an Entrustment Agreement for Permanent Surrender of Child on November 3, 2005. At that time, C.H. was removed from his father's home to the custody of CDSS pursuant to an emergency removal order. C.H.'s father voluntarily agreed to the termination of his parental rights with respect to C.H. On or about January 3, 2006, CDSS filed a petition to terminate Harder's residual parental rights and for approval of the entrustment agreement and termination of C.H.'s father's parental rights.

which, when combined with other evidence concerning the parent/child relationship, can support [the] court's finding that the best interests of the child will be served by termination." Id.

The record supports the trial court's finding that CDSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2) and establishing that the termination of Harder's residual parental rights was in C.H.'s best interest. Thus, we need not address the trial court's findings with respect to Code § 16.1-283(B).

Accordingly, we summarily affirm the trial court's decision.

Affirmed.